## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**TONY SANDOVAL, JR.,**

    **Plaintiff,**

**vs.**           **No. CIV 05-806 LCS**

**JOANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

  **THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse and Remand Administrative Agency Decision [Docket #9], filed November 18, 2005.  The Commissioner of Social Security issued a final decision denying Plaintiff's applications for supplemental security income and disability insurance benefits.  This matter comes before this Court pursuant to 28 U.S.C. § 636(c).  The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and being otherwise fully advised, finds that this Motion is not well-taken and should be **DENIED**.

### I.  STANDARD OF REVIEW

  The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).  The decision of an Administrative Law Judge

("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record. *Id.* at 805.

In order the qualify for disability insurance benefits or supplemental security income, a

claimant must establish a severe physical or mental impairment expected to result in death or to

last for a continuous period of at least twelve months which prevents the claimant from engaging

in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)

(citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for

evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of

the sequential evaluation process, the claimant must show that he is not engaged in substantial

gainful employment, that he has an impairment or combination of impairments severe enough to

limit his ability to do basic work activities, and his impairment meets or equals one of the

presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P,

App. 1. Alternatively, he may show he is unable to perform work he had done in the past. 20

C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At

the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the

claimant is able to perform other substantial gainful activity considering his residual functional

capacity, age, education, and prior work experience. *See Gibson v. Bowen*, 838 F.2d 442, 448

(10th Cir. 1988).

## II.    PROCEDURAL HISTORY

Plaintiff, now 49 years old, filed his applications for supplemental security income and

disability insurance benefits on October 23, 2002 [R. at 49-51; 196-98], alleging disability

commencing on August 23, 2002. Plaintiff's alleged disability is due to back pain, sciatica,

weakness in the legs, and carpal tunnel syndrome.  [R. at 61]  Mr. Sandoval has an eleventh grade

education and past relevant work as a truck driver and heavy equipment operator.  [R. at 67, 70]

Mr. Sandoval's initial application for supplemental security income was denied on January

27, 2003 [R. at 32-36] and his application for disability insurance benefits was denied on April 11,

2003.  [R. at 39-43]  Plaintiff filed a Request for Reconsideration on March 18, 2003 [R. at 37-

38] and a Request for Hearing before Administrative Law Judge on May 15, 2003.  [R. at 44-45]

Attorney Bradley Keeler was retained by Plaintiff on February 28, 2004.  [R. at 29]

The hearing before the ALJ was held on September 15, 2004, at which time Plaintiff and

his wife, Angie Sandoval, testified.  [R. at 219-44]  The ALJ issued a decision denying Mr.

Sandoval's application on October 22, 2004 [R. at 18-23] analyzing his claim in accordance with

the sequential evaluation procedure set forth in 20 C.F.R. § 404.1520(a)-(f).  At step one of the

evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the

alleged onset of disability.  [R. at 19]  At the second step, the ALJ found that Mr. Sandoval had

an impairment considered 'severe' based on the requirements of 20 C.F.R. § 404.1520(b).  [R. at

20]  The ALJ further found that Plaintiff's impairments did not meet or equal any of the

impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R.

§§ 404.1501-1599.  Id.  The ALJ also found Plaintiff was not fully credible regarding the extent

of his limitations.  Id.

At step four, the ALJ found that claimant was unable to perform his past relevant work as

a heavy machine operator and bus driver, but that he retained the Residual Functional Capacity

("RFC") for light work.  [R. at 21]  At step five, the ALJ determined that, despite his limitations,

Mr. Sandoval would be able to perform work existing in significant numbers in the national economy and that, therefore, he had not been under a disability, as defined in the Social Security Act, at any time during the period under review.  [R. at 22]

Mr. Sandoval petitioned the Appeals Council for review of the ALJ's decision and this petition was denied on May 27, 2005 [R. at 6-9], rendering the ALJ's decision the final decision of the Commissioner.

## III.   DISCUSSION

The medical records in this case date from May, 2002, at which time Plaintiff began seeking medical attention for low back pain.  [R. at 132-36]  Mr. Sandoval at that time indicated that ibuprofen decreased his discomfort somewhat, but stated that muscle relaxants were of no use and that chiropractic manipulations increased symptoms and caused severe headaches.  [R. at 136]  Difficulties with sciatica were also mentioned at this time, as was hip pain.  [R. at 135] Strength and sensation in the extremities was apparently tested, but the poor quality of the available records makes it impossible to discern the results of these examinations.  Id.

An MRI of the lumbar spine was performed in May, 2002.  [R. at 213]  Dr. Bruce Schuurmann observed no disk protrusion, or canal or neural foraminal narrowing.  Id.  An abnormal signal at the T-12 level suggested some fatty infiltration of the vertebrae.  Id.  Also observed was mild L4-5 disk degeneration.  Id.  However no significant facet osteoarthritis or compression fractures were seen.  Id.

In July and August of 2002, Plaintiff underwent several tests including an MRI and  CT scan for an apparent cyst on his right kidney.  [R. at 127-131]  The ultimate outcome of these tests is not apparent from the record.  During this period Plaintiff continued to complain of low

back pain and a 'clicking' sensation in his neck. [R. at 125] In August, 2002 he reported his pain level to be a 2 out of 10. Id. Grip strength was noted to be good. Id. Dr. Bull, who had observed Plaintiff for both his kidney and back complaints ordered X-rays of the cervical spine, noting there had been no recent trauma, but that Mr. Sandoval was experiencing 'tingling' sensations in the upper extremities. [R. at 124] Dr. Arnold Miller, on examining these films, noted all aspects to be within normal limits with no evidence of fracture or bone pathology. [R. at 123]

The CT scan of the cervical spine performed in August, 2002 revealed no abnormal findings. [R. at 111] The study began at the base of the skull and ended at the T1 vertebral body and revealed no fractures and a normal spinal canal without narrowing. Id. All views of the spine appeared normal. Id. Also in August, 2002, Dr. Bull recommended Mr. Sandoval be evaluated for physical therapy, while noting Plaintiff did not want any type of spinal manipulation. [R. at 122] Dr. Bull also noted good bilateral hand grip, but stated that Plaintiff complained of tingling in the hands and upper extremity weakness. [R. at 118]

In September, 2002, Dr. Bull sent Plaintiff for a neurology consult for further evaluation of tingling in the hands. [R. at 117] Dr. Bull noted his own findings of normal reflexes and muscle strength. Id. Mr. Sandoval had apparently been prescribed amitriptyline[1] at this time as well. [R. at 116] The electrodiagnostic study performed by Dr. Richard Breeden revealed abnormalities of prolonged motor and sensory distal latencies in the bilateral median nerves. [R. at 111-13] Dr. Breeden's impression was of bilateral carpal tunnel syndrome with moderate

---

[1]Amitriptyline is indicated for the treatment of depression. *Physicians' Desk Reference*, 549 (54th ed. 2000).

compression.  [R. at 111]  It was recommended that Mr. Sandoval first try conservative therapy consisting of nocturnal wrist splints and anti-inflammatory medications.  Id.  It was noted  that surgery might be indicated at some future time.  Id.  Mr. Sandoval continued on a course of amitriptyline and naproxen[2] until November, 2002, during which time he apparently had several visits with Dr. Bull.  [R. at 106-10]  Also during this time Plaintiff consulted with physical therapy to be fit for wrist splints.  [R. at 106]

Plaintiff underwent several examinations and completed questionnaires upon filing his application for social security benefits in October, 2002.  A disability field report was completed during which the examiner, during a face to face meeting with Mr. Sandoval, observed apparent difficulty sitting, standing, and walking.  [R. at 59]  The interviewer stated that Plaintiff appeared to be in pain during the interview.  [R. at 58]  Mr. Sandoval's own description of his problems included an inability to stand for a long period of time or to lift heavy objects.  [R. at 61]  He also indicated postural limitations such as an inability to bend or squat.  Id.  Plaintiff described weakness in his lower extremities and numbness in his arms and hands.  Id.  He further stated he was constantly fatigued due to an inability to sleep.  Id.

Plaintiff listed past relevant work as a truck driver, bus driver, and heavy equipment operator.  [R. at 71]  He stated that these jobs had required a degree of heavy lifting.  Id.  Mr. Sandoval also listed his current medications, which included amitriptyline, naproxen, and methocarbamol.[3]  [R. at 65]  In his daily activities questionnaire, Mr. Sandoval indicated that he

---

[2]Naproxen is a nonsteroidal anti-inflammatory drug (NSAID) with analgesic and antipyretic properties. *PDR*, 2631.

[3]Methocarbamol is indicated as an adjunct to physical therapy and other measures for the relief of discomfort associated with acute, painful musculoskeletal conditions.  *PDR*, 2606.

typically had to rest after finishing an activity. [R. at 78] He indicated that he walked approximately 3 miles per day, but that he had some difficulty performing fine motor movements such as picking up coins from a level surface. Id. Plaintiff's responses further indicated that he had little trouble interacting with family or peers and that he had maintained a good work record during his periods of employment. [R. at 72-73]

Mrs. Angie Sandoval also filled out a third-party daily activities questionnaire in April, 2003. [R. at 90-92] She indicated her husband was able to perform various household chores, though he had difficulty with anything requiring fine motor movements. [R. at 91] Mrs. Sandoval stated that Plaintiff generally got along well with others, but that he was limited in some of his favorite activities because of back problems and that he often had difficulty sleeping. [R. at 92] She also indicated Mr. Sandoval was frustrated by his continuing pain. Id.

A physical residual functional capacity assessment was performed on Plaintiff in January, 2003. [R. at 139-46] It was found that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. [R. at 140] The examiner determined that Mr. Sandoval could sit and/or stand for up to 6 hours in an 8-hour workday. Id. Plaintiff was felt to be unlimited in his ability to push and/or pull. Id. No postural, manipulative, visual, environmental, or communicative limitations were established. [R. at 141-43] The examiner found that Plaintiff's alleged limitations were not wholly supported by the medical evidence on file. [R. at 144]

In February of 2003, Mr. Sandoval underwent a lumbar epidural block which consisted of injecting steroids into the spinal column as treatment for lumbar disk disease and sciatica. [R. at 153-55] This technique was again performed several weeks later. [R. at 151-52] Plaintiff observed that the initial treatment had controlled his pain for only two days. Id. A second lumbar

spine injection was performed by Dr. Frechette in March of 2003.  [R. at 149]

In April of 2003, Mr. Sandoval received a physical therapy evaluation from Crownpoint Healthcare.  [R. at 161-166]  It was noted at that time that physical therapy had been of little benefit to claimant and that Plaintiff's movement was severely restricted.  [R. at 161]  The evaluator noted that Plaintiff was in no obvious distress, but later stated that Mr. Sandoval was "exquisitely tender" on palpation of the T1-T2 vertebrae.  [R. at 162]  It was further noted that Plaintiff was unable to sit unsupported by his hands.  Id.  The evaluator stressed the etiology of Mr. Sandoval's pain was unknown.  Id.

Plaintiff underwent a CT scan of the lumbar spine in March, 2003.  [R. at 148]  The study, evaluated by Dr. Digamber, revealed no evidence of disc herniation or protrusion.  Id.  Nerve roots, neuroforamina, and facet joints all appeared to be within normal limits.  Id.  Plaintiff was discharged from his physical therapy program in August, 2003 after reporting a significant worsening of his symptoms which extended from the cervical to the lumbar spine.  [R. at 186]  An orthopedic consult was suggested.  Id.

In October, 2003, Dr. Alexander Vujan completed a questionnaire dealing with his treatment of Plaintiff, which apparently began in August, 2003.  [R. at 178-82]  Dr. Vujan diagnosed Mr. Sandoval with chronic back pain, carpal tunnel syndrome, and depression secondary to his pain condition.  [R. at 178]  Dr. Vujan based these diagnoses on Plaintiff's limited range of motion and tenderness in his back, and an observed weakness in the hands, accompanied by sensations of numbness.  Id.

Dr. Vujan observed that Plaintiff's symptoms of depression had improved with antidepressant medications.  Id.  He further recommended physical therapy and a surgical consult

with orthopedics.  Id.  Additionally, he prescribed ibuprofen, naproxen, and percocet[4] and advised Mr. Sandoval to maintain his level of activity as tolerated and treat pain symptoms with medication as needed.  Id.  Finally, Dr. Vujan opined that Plaintiff could not maintain full-time employment, and that he would never be able to do so.  [R. at 179]

When questioned about Mr. Sandoval's specific limitations, Dr. Vujan opined that Plaintiff could sit for up to two hours at a time and up to six hours in an eight-hour workday.  [R. at 180] He stated Plaintiff could frequently lift and/or carry five pounds and occasionally lift up to ten pounds.  Dr. Vujan further indicated that Mr. Sandoval could frequently engage in repetitive grasping and repetitive fine manipulation with the right hand and could occasionally do so with the left hand.  [R. at 181]  No limitiations were noted in the use of the legs or feet.  Id. Additionally, Dr. Vujan restricted Plaintiff from any climbing activities and from being around unprotected heights or moving machinery.  Id.  Dr. Vujan expected that Plaintiff's condition would never show any improvement.  [R. at 182]

Mr. Sandoval apparently had surgery on his left wrist and hand in early 2004, although the operative records have not been provided to the Court.  [R. at 183-85]  At a physical therapy evaluation in May, 2004 Plaintiff indicated he had no pain in his hands at rest, but with use experienced a pain level of 5-6.  [R. at 193]  Significant weakness was noted in the left hand.  Id. Plaintiff's long term goals included braiding hair, making kachina dolls, and playing basketball. Id.  The therapist indicated that Plaintiff would likely reach those goals with two to three months of physical therapy.  Id.

---

[4]Percocet, a combination of oxycodone and acetaminophen, is a Schedule II controlled substance and can produce drug dependance.  Percocet is indicated for the relief of moderate to moderately severe pain.  *PDR*, 1037.

9

IV.    ANALYSIS

Plaintiff raises four allegations of error in his Motion to Reverse and Remand.  He claims the ALJ erred by, 1) failing to explain the weight given to the opinion of his treating physician, 2) failing to recontact his treating physician, 3) failing to cite to the record when determining Plaintiff's RFC, and 4) applying the grids when claimant had significant nonexertional impairments.

a.    Opinions of Treating Physicians

Plaintiff's first allegation of error is that the ALJ failed to explain what weight he gave to the opinions of Plaintiff's treating physician, Dr. Alexander Vujan.  It is well-accepted in this circuit that the ALJ must give controlling weight to the opinions of treating physicians when those opinions are well-supported and not inconsistent with other substantial evidence of record.  *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001); 20 C.F.R. § 404.1527(d)(2).  Factors to be considered in evaluating a treating physician's opinion include the opinion's consistency with other evidence, the length of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence.  *Id.*

I have examined the ALJ's opinion thoroughly and find that the ALJ did give specific reasons for the weight given to Dr. Vujan's opinions.  The ALJ is required to consider all the evidence and must discuss the uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence he rejects.  *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  In accordance with *Clifton*, the ALJ did discuss his reasons for not fully crediting Dr. Vujan's opinions, namely that his opinions contradicted other evidence on the record and did not appear to be based on objective findings.  [R. at 21]  Additionally, I note that the opinion of

permanent disability was not consistent with other opinions of record, that at the time of the statements in question, Dr. Vujan had been seeing Plaintiff for only two months, that the frequency of examination is not apparent from the record, and that Dr. Vujan's records do not explain how he arrived at his findings.  [R. at 178-82]  Because the ALJ determined Dr. Vujan's conclusions were contradictory and not supported by objective findings, he was well within his discretion to discredit those conclusions.  *White*, 287 F.3d at 907.  As such, the decision of the Commissioner on this issue should be upheld.

> **b.**     **Duty to Develop Record**

Mr. Sandoval next contends that the ALJ was required to recontact Dr. Vujan for clarification of his medical records and to obtain additional information.  He bases this contention on the ALJ's comment that, "[t]he objective medical record simply fails to identify a back impairment which would reasonably translate into such limitations."  [R. at 21]  Under the governing regulations the ALJ must recontact a treating physician when the information the doctor provides is "inadequate . . . to determine whether [the claimant is] disabled."  20 C.F.R. § 416.912(e).  It is not the rejection of the treating physician's opinion that triggers the ALJ's duty to recontact the physician, but the inadequacy of the evidence received from the treating physician.  *Id.*

The ALJ apparently believed the information received from Dr. Vujan was adequate for consideration; that is, it was not so incomplete that it could not be considered.  *See White*, 287 F.3d at 908.  However, the ALJ also believed that the conclusion reached by Dr. Vujan was insufficiently supported by the record as a whole.  *Id.*  The ALJ made this determination because the opinion of permanent disability was not supported by objective medical evidence and was

11

based on less detailed clinical examinations than the ones he chose to rely on.  [R. at 21]  It was therefore within the ALJ's discretion to reject this evidence and Plaintiff's argument that the ALJ breached his duty as factfinder must be rejected.

     **c.**     **Assessment of Residual Functional Capacity**

Plaintiff's next allegation of error is that the ALJ's determination that he retained the RFC for light work was not supported by substantial evidence.  Specifically, he argues that the ALJ, while rejecting Dr. Vujan's opinion, did not cite to other evidence to support his RFC determination.  A claimant's RFC is determined by what the individual can do despite his limitations, and it is based upon all the relevant evidence, including medical records, observations of treating physicians, and others, as well as on a claimant's own descriptions of his limitations. 20 C.F.R. §§ 416.945(a)-416.946.

I reject Plaintiff's contention that the ALJ did not cite to medical sources to support his RFC determination.  The ALJ found that Plaintiff retained the residual functional capacity to perform work at the light exertional level.  [R. at 21]  He based this finding on numerous imaging studies which indicated no pathology in Mr. Sandoval's back.  Id.  He also discussed reports of various physical therapists indicating Plaintiff had good range of motion and normal strength and referred to Plaintiff's own description of his daily activities.  [R. at 20]  The ALJ further mentioned Mr. Sandoval's recent carpal tunnel surgery and referred to the therapist's statement that Plaintiff would be able to reach his range of motion and dexterity goals given two to three months of therapy.  [R. at 21]

While the ALJ did reject Dr. Vujan's opinion that Mr. Sandoval was permanently disabled, he gave adequate reasons for doing so, as this opinion was not supported by clinical evidence and

was contradicted by other evidence on the record.  *See Clifton*, 79 F.3d at 1009-1010.

Additionally, there was not a great deal of medical evidence provided in this case.  The Tenth

Circuit recently rejected the "argument that the agency, not the claimant, has the burden to

provide evidence of claimant's functional limitations . . . . the agency's burden . . . does not

include the burden to provide medical evidence in support of an RFC assessment." *Howard v.*

*Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004).  As such, I find that the ALJ's RFC determination

was supported by substantial evidence and should be upheld.

> **d.    Analysis of Allegedly Disabling Pain**

Mr. Sandoval's final allegation of error is that the ALJ improperly applied the Medical-

Vocational Guidelines ("grids") because Plaintiff had significant nonexertional limitations which

precluded use of the grids.  Specifically, Plaintiff argues that reliance on the grids was

inappropriate when evaluating his complaints of pain.  Use of the grids is inappropriate when the

claimant suffers from both exertional and non-exertional impairments when a vocational expert is

not consulted.  *See* 20 C.F.R. Subpt. P., App. 2 § 200(e); *see also Channel v. Heckler*, 747 F.2d

577, 581 (10th Cir. 1984).

Plaintiff alleged a non-exertional impairment of pain.  *Id.* at 580.  A claimant's subjective

allegation of pain is not sufficient in itself to establish disability.  *Thompson v. Sullivan*, 987 F.2d

1482, 1488 (10th Cir. 1993); *see also Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988).

Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove

by objective medical evidence the existence of a pain-producing impairment.  *See Luna v. Bowen*,

834 F.2d 161 (10th Cir. 1987).  The ALJ must consider 1) whether Claimant has established a

pain-producing impairment by objective medical evidence; 2) if so, whether there is a 'loose

nexus' between the proven impairment and the Claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling. *Id.* at 163-64.

The ALJ does not dispute that Mr. Sandoval has some degree of back pain. However, when analyzing the evidence presented in light of the *Luna* factors, it is apparent that there is a lack of objective medical evidence to establish an impairment of back pain, such that, despite Plaintiff's allegations, the evidence does not support a conclusion of disabling pain. The Tenth Circuit has held that "[t]he mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson*, 987 F.2d at 1488; *see also Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989). Rather, the pain must interfere with the ability to work. *Id.* Because there is no substantial evidence that Plaintiff's pain exists at a disabling level of severity, I find that the ALJ did not err in relying on the grids.

### V.     CONCLUSION

Upon review of the evidence presented in this Motion to Reverse and Remand Agency Decision, I have determined that the Commissioner's decision was supported by substantial evidence and that the ALJ adequately developed and considered the record. Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing is **DENIED.**

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**

15